## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDDA CESTERO DE AYALA**, | CIVIL NO. 12-    (    ) |
| Plaintiff | |
| v. | Political Discrimination Claim<br>42 U.S.C. §1983 and §1988; Puerto Rico Constitution; Articles 1802 and 1803; Law No. 115 of December 20, 1991 |
| **PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"); OTONIEL CRUZ CARRILLO**, personally and in his official capacity as Executive Director of the PREPA; **MIGUEL A. CORDERO LOPEZ**, personally; **ASTRID RODRIGUEZ CRUZ**, personally and in her official capacity as Human Resources Director of PREPA; **ARTURO DELIZ VELEZ**, personally and in his official capacity as Resources Management Administrator; **JOHN DOE** and **RICHARD ROE**, personally, | TRIAL BY JURY REQUESTED |
| Defendants | |

## COMPLAINT

COMES NOW, Plaintiff, and through the undersigned attorneys very respectfully states and prays:

### NATURE OF THE ACTION AND JURISDICTION

1. This is an action for compensatory and punitive damages, injunctive and equitable relief, arising under the First and/or Fourteenth Amendments to the Constitution of the United States of America; 42 U.S.C. § 1983 and § 1988; under Article 2, §§§ 1, 4 and 8 of the Constitution of the Commonwealth of Puerto Rico; and under Articles 1802 and 1803 of the Puerto Rico Civil Code for the violation of plaintiff's freedom of association. It is also an action under Law No. 115 of December 20, 1991 for defendants' retaliatory conduct against Cestero.

2. This Court has jurisdiction to entertain these claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 28 U.S.C. 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4. Plaintiff repeats and realleges each and every preceding allegation as if fully set herein.

5. Plaintiff, Edda Cestero De Ayala, (hereafter referred to as "Cestero") has been, at all times relevant to the complaint, a resident of the Commonwealth of Puerto Rico and a career employee of the Puerto Rico Electric Power Authority. At all relevant times, Cestero has held the career position of Real Property Appraisal Supervisor.

6. Defendant, Puerto Rico Electric Power Authority, (hereafter referred to as "PREPA") is a public corporation of the Commonwealth of Puerto Rico, and not subject to the immunity provided by the eleventh amendment of the Constitution of the United States. It is a "person" for purposes of the cause of action brought under 42 U.S.C. §§ 1983 and 1988. It has the capacity to sue and be sued.

7. Defendant, Otoniel Cruz Carrillo, (hereafter referred to as "Cruz") is the Executive Director of PREPA and its highest policy maker. He is the appointing authority at PREPA. He is being sued in his personal and official capacities.

8. Miguel Cordero López, (hereafter referred to as "Cordero") was, at all relevant times to the complaint, the Executive Director of PREPA.

9. Defendant, Astrid Rodríguez Cruz, (hereafter referred to as "Rodríguez") is the Director of Human Resources at PREPA. She is being sued in her personal and official capacities.

10. Defendant, Arturo Deliz Vélez, (hereafter referred to as "Deliz") at all times relevant herein was the Resources Management Administrator ("Administrador de Gerencia de Recursos") at PREPA. Deliz is a well-known member and political activist of the New Progressive Party (hereafter referred to as "NPP").

11. At all relevant times, defendants were acting under color of law and under the authority of the offices each held at the time.

## THE NARRATIVE

12. On November 4, 2008, general elections were held in the Commonwealth of Puerto Rico. There was a change in power in the Central Government, which during the preceding four-year term had been governed by the Popular Democratic Party (hereinafter referred to as "PDP"). As a result, Hon. Luis Fortuño Burset, from the NPP was elected as Governor.

13. The newly elected Governor, appointed Cordero as Executive Director at PREPA. Cordero shares the Governor's affiliation to the NPP. Cordero acted as Executive Director until September 2011.

14. Cruz substituted Cordero as Executive Director and currently holds the position.

15. Cordero appointed Rodríguez to the position of Director of Human Resources upon the NPP administration's assumption of power. Rodríguez is a well-known member of the NPP.

16. Cestero began working for PREPA in February of 1988, as an Office Clerk. In 1991, Cestero became a Real Estate Specialist. She was promoted to the position of Supervisor of Real Property Appraisal Office in 2004. Cestero currently earns a monthly salary of, approximately, $5,000.00, plus benefits.

17. Cestero is and has always been qualified and capable to fulfill the duties of her position as Supervisor of the Real Estate Appraisals Office.

18. Cestero has always performed these duties in a satisfactory manner and has never been disciplined or reprimanded for conduct within the scope of her employment.

19. Cestero is a well-known member of the PDP. Defendants knew that Cestero was politically affiliated to the PDP because at PREPA it is extremely common for employees to express their political views. Additionally, she has worked as a PDP official at polling stations with PREPA coworkers who represent the NPP and has been seen by coworkers during electoral events in which Cestero has been identified as an official representative of the PDP.

20. Also it is publicly known that PREPA is has been politically utilized by the NPP and PDP to reward political affiliates who provide support to the prevailing party during the electoral events with appointments after assuming power. Political appointees at PREPA have some of the highest salaries in the public sector in Puerto Rico.

21. Under the previous PDP's administration, Deliz held the position of Claims Investigator. With the advent of the NPP administration, Cordero appointed Deliz to a newly created position of Resources Management Administrator in the trust service. Deliz' appointment was in recognition for his political support during the previous campaign and entailed a substantial increase in salary and privileges.

22. Upon assuming his new position, Deliz was assigned to supervise the Architecture Division as well as the Planning Division.

23. Deliz has no academic preparation or training in Architectural Sciences or Studies.

24. Deliz has no academic preparation or training in Planning ("Planificación").

25. As part of her duties as Real Property Appraisal Supervisor, Cestero had to interact frequently with the Architectural Division of PREPA.

26. As part of her official visits to the Urban Planning Division, Cestero would come into contact with codefendant Deliz.

27. Deliz would thrash the employees he knew were affiliated to the PDP. These included repeated comments that he would rid the Division of all "Populares", as the members of the PDP are known.

28. He would harass the secretary, Ms. Zaida Rojas (hereafter "Rojas"), by threatening to throw her out of her workplace, even to the point of bringing her to tears. Rojas is known as an affiliate of the PDP.

29. Deliz made good on his threats and transferred Rojas out of her office and sent her on an unwelcomed work location.

30. Although codefendant Rodríguez knew that the transfer of Rojas was politically motivated, she still approved the move by Deliz and gave it PREPA's *imprimatur*.

31. Deliz also got rid of the two other PDP affiliates in the Urban Planning Division, architect Wilfredo Quiñones and Office Systems Assistant, Josué Valentín.

32. Instead, Deliz retained the only NPP affiliate at the Urban Planning Division, Luis Sánchez as Supervising Architect.

33. Sánchez is not a licensed architect.

34. Wilfredo Quiñones is a licensed architect.

35. By June of 2009, Deliz, in his position as Resources Management Administrator, was located in the physical area assigned to the Urban Planning Division.

36. On March 8, 2011 Cordero announced that Deliz was going to supervise the Office of Real Estate Appraisals and Evaluations Office–("Oficina de Estudio y Evaluación de Bienes Inmuebles"). This is where Cestero had been working as a supervisor. Since 1988, when Cestero

began as an Office Clerk, the Real Estate Appraisals and Evaluations formed part of the Real Estate Office.

37. Deliz has no academic preparation or training in Real Estate Appraisal and Assessment.

38. Cestero has approved all Real Estate Appraisal and Assessment courses. She is also a licensed real estate broker.

39. Since September of 2009, Deliz would frequently boast that he was "going to establish his [political] campaign committee" at the Urban Planning Division. Shortly thereafter, Deliz was assigned to supervise, among others, Cestero.

40. Deliz' appointment was announced on March 8, 2011. Under the supervision of Deliz, Cestero's working conditions were supposed to remain unchanged and there was to be no change in the duties she had been performing, prior to Deliz' assignment as her supervisor.

41. Approximately one month after the March 8, 2011 announcement, Deliz transferred Cestero from the private office she had held since she became Supervisor in 2004.

42. Cestero was relocated to the former Board of Directors vault. This space was substantially smaller and did not even have windows.

43. Deliz' next discriminatory move against Cestero was to strip her of the assigned parking space which she had been using for the last several years.

44. Deliz also deprived Cestero of access to the Budget of the Real Estate Appraisals and Evaluations Office. As a result, Cestero has not participated in nor has been consulted by Deliz regarding the budget of the office she supervises. This was one of Cestero's duties as Supervisor.

45. These actions by Deliz have been predicated in Cestero's affiliation to the PDP, a well known fact to Deliz and the other defendants.

46. On June 29, 2011, Cestero filed an administrative charge alleging, *inter alia*, political discrimination against PREPA and Arturo Deliz Vélez.

47. As a result of Cestero's filing of her administrative charge, Deliz, with the knowledge and approval of defendant Rodríguez, commenced a retaliatory campaign against Cestero.

48. Some of the retaliatory actions taken against Cestero are:

    a. Deliz would sideline Cestero by deleting her name from memoranda generated by Cestero to her Supervisors which needed to pass through each level in the chain of command;

    b. Deliz would deauthorize Cestero's Commitment Reports ("Informe de Compromisos") that were required to inform necessary field visits by PREPA employees;

    c. Deliz wrote defamatory e-mails about Cestero and, even copied third parties who were not supposed to be concerned with the matters discussed.

49. On December 1st, 2011, Cestero went to deliver official documents to the Resources Management Office because her secretary was enjoying her regular leave. She was denied access by Jorge Ríos Arroyo, Deliz' personal secretary.

50. On that day, Cestero left the Resources Management Office without delivering the official documents, but went directly to the Executive Director's Office and explained to Lydia Enid Rivera, one of Cruz's assistants, that she had been denied access to the Resources Management Office to deliver official documents.

51. Lydia Enid Rivera told Cestero that she would contact the Resources Management Office at PREPA.

52. On December 2, 2011, Cestero attempted again to deliver the documents of December 1st, 2011 and other official ones, which had been received and, in order to be properly handled, required delivery to the Resources Management Office.

53. When Jorge Ríos Arroyo started to open the door after Cestero rang the bell, he attempted to shut it in her face. Cestero placed her foot and impeded that Ríos closed the door.

54. Cestero opened the door and entered the office, and waited for someone to receive the documents while Ríos had gone to Deliz' private office.

55. When Ríos came out, he yelled at Cestero that Deliz told him "to tell you to get the hell out, that you could not be there" ("que me largara de la oficina porque yo no podía estar allí").

56. Luis B. Ramos, another employee of the Resources Management Office who had just seen what happened, proceeded to receive the documents from Cestero.

57. Ramos received the documents and gave Cestero a receipt.

58. Cestero left the Resources Management Office and, again, went directly to the Executive Director's office.

59. Cruz could not receive Cestero but through an assistant informed her that he would meet with her the following Monday, December 5, 2011.

60. Around 11:15 a.m. on December 2, 2011, the Chief of Private Security at PREPA came to Cestero's office and told her that two state police officers were looking for her.

61. Cestero told the police officers to come in. They asked Cestero if she had had any problem that day. Cestero said she had not.

62. The officers told her that there was an accusation against her for assault against Ríos.

63. Cestero explained what happened before and asked if that could have been a basis for a criminal complaint against her.

64. The police officers informed Cestero that they would meet again with Ríos to determine how to proceed.

65. While the officers were in Cestero's office, she called the Executive Director and PREPA's Security Supervisor, Mr. Carlos Bosque, who was present during the meeting with the police officers.

66. After her lunch break, Cestero went to the Executive Director's Office. While she was in the reception area, the PREPA's Executive Director arrived.

67. Almost in tears, Cestero implored from Cruz to afford her five minutes to meet with her.

68. Cestero explained to Cruz everything that Deliz had done to her, including Cordero's hollow offers to correct the situation as well as Rodríguez's complete disregard for Cestero's plight.

69. When the meeting concluded, Cruz assured Cestero that as of next Monday, December 5, 2011, Deliz would no longer be her supervisor.

70. Cestero felt comforted by Cruz' assurances and left for the weekend on a more positive mood.

71. On Monday, December 5, 2011 reality struck again when nothing had changed. Deliz was still Cestero's supervisor.

72. In a retaliatory barrage, Deliz bombarded Cestero with several baseless disciplinary memoranda. These included one faulting her for having been absent on Friday, December 2, 2011, when she was meeting with Cruz to complain about Deliz' discriminatory and retaliatory conduct against her.

73. Cestero delivered a copy of Deliz' memoranda personally to the Executive Director's Office.

74. Indeed, Deliz did not authorize Cestero's payroll and subtracted one and one half hours corresponding to the time when Cestero met with Cruz on December 2, 2011 to complain about Deliz.

75. Cestero objected to Deliz regarding the 1 ½ hour reduction in the payroll. Cestero also delivered a copy of her objection to defendants Cruz and Rodríguez at PREPA's Human Resources Department.

76. The illegal deduction in Cestero's payroll for December 2, 2011 was never corrected by defendants. Such conduct is another instance of illegal retaliation.

77. Between late December 2011 and early January 2012, Cestero received a text message from Héctor Serrano informing her that he would be her new supervisor.

78. Despite Serrano's text message, Cestero continued under Deliz' supervision.

79. In February of 2012, the personnel of the office of Real Estate Appraisals was transferred from PREPA's Headquarters and sent to its Monacillos' location.

80. The alleged transfer of the Real Estate Appraisals Office from PREPA's Santurce Headquarters to Monacillos was discriminatory and in retaliation against Cestero.

81. Cestero's office in Monacillos is that much smaller and inhospitable than even the "vault" at the Headquarters.

82. Meanwhile, Deliz, who had been openly discriminating and retaliating against Cestero, continued to enjoy the fruits, privileges and "spoils" of the victor.

83. Immediately after her transfer to Monacillos, defendants deprived Cestero of part of her support staff.

84. In contravention of PREPA's policies, Deliz kept Cestero's "personal file" at his office, when said file should have been transferred together with Cestero. Upon a transfer to a different location, the "personal file" should follow the employee. Deliz kept Cestero's file until June 1, 2012.

85. PREPA also keeps a *personnel* file at the Human Resources office at Headquarters.

86. Without informing Cestero, at least as of May 15, 2012, defendants changed her position "de facto" and Cestero is now the Supervisor of the Contracts Section.

87. Defendants' illegal conduct constitutes discrimination and retaliation against Cestero because of her affiliation to the PDP, a political party different than that of the ruling NPP administration in violation of the First Amendment to the Constitution of the United States.

88. Defendants' conduct against Cestero constitutes a reckless disregard for the rights of plaintiff in violation of her first amendment protection to freely associate.

## FIRST CAUSE OF ACTION

89. Plaintiff repeats and realleges each and every preceding allegation as if fully set herein.

90. Cestero is a career employee of PREPA, and the actions taken against her, because of her affiliation to the PDP violate the First and Fourteenth Amendments to the Constitution of the United States. *Elrod v. Burns,* 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party* , 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Cordero v. De Jesús Méndez,* 867 F.2d 1 (1st Cir. 1989).

91. Defendants' conduct constitutes a callous or reckless disregard for the first amendment rights of Cestero to freely associate to the political party of her preference and not to be discriminated against for choosing a different party than that of the present administration at

PREPA.

92. As a result of this violation, Cestero has suffered severe emotional damages, pain and suffering for which defendants are jointly and severally liable. Among these damages are the deterioration of family relations, loss of self-esteem, loss of enjoyment of life, anxiety, depressive behavior, pain and suffering.

## SECOND CAUSE OF ACTION

93. Cestero repeats and realleges each and every preceding allegation as if fully set herein.

94. Defendants are liable for the violation of plaintiff's constitutional rights insofar "as the policy and custom" effected by PREPA's policy makers, codefendants Cordero and Cruz, and its agents and employees, resulted in the deprivation of plaintiff's federally protected rights. *Praproptnik v. City of St. Louis,* 485 U.S. 112 (1988); *Cordero v. Juan De Jesús Méndez,* 867 F.2d at p.7.

95. As a proximate result of said deprivation, Cestero has suffered damages for which PREPA and its executives and officers are liable.

## THIRD CAUSE OF ACTION

96. Plaintiffs repeat and reallege each and every preceding allegation as if fully set herein.

97. Individual co-defendant's conduct, as previously described, constitutes an agenda to discriminate against plaintiff and deprived her of her federally protected rights. Co-defendants Cordero and Cruz, as PREPA's Executive Directors and the ultimate decision makers in administrative matters regarding the personnel of the public corporation, are responsible, together with Rodríguez, as Human Resources Director, for plaintiff's deprivation of the duties of their

positions, and for having left her with, practically, no duties to perform, in complete disregard of their federally protected rights. All of this was done by individual co-defendants because of plaintiff's affiliation to a different party than that of the governing NPP.

98. As a result of co-defendants' acts and/or omissions, Cestero has suffered extreme damages for which co-defendants are jointly and severally liable.

## FOURTH CAUSE OF ACTION

99. Defendants' conduct in depriving plaintiff of her duties and of the benefits assigned to her, because of their affiliation to a party different than that of governing NPP administration, constitutes such a blatant violation in reckless and callous disregard for the federally protected rights of plaintiff that she is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION

100. Cestero repeats and reallege each and every preceding allegation as if fully set herein.

101. Defendants' conduct against Cestero for having engaged in protected activity through the filing of an administrative charge before the Anti Discrimination Unit of the Puerto Rico Department of Labor constitutes unlawful retaliation under Puerto Rico Law No. 115 of December 20, 1991 ("Law 115").

102. PREPA and Deliz are liable to Cestero for double the amount of damages suffered by her as a result of defendants' retaliatory conduct.

103. Cestero is also entitled to attorneys fees.

## TRIAL BY JURY

104. Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

In light of the foregoing, plaintiff prays for the following relief from this Honorable Court:

a. Injunctive relief ordering PREPA to reassign Cestero to the career position as employee and supervisor of the Real Estate Appraisals Office she held before the discriminatory and retaliatory conduct by defendants, together with its inherent duties;

b. Damages for the violations of plaintiff's First Amendment rights in an amount not less than $500,000.00;

c. An award of double damages under Law No. 115;

d. Punitive damages an amount not less than of $250,000.00;

e. Costs and attorneys fees pursuant to 42 U.S.C. § 1988; and

f. Any other relief the court may deem appropriate.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of June, 2012.

        **GONZÁLEZ MUÑOZ LAW OFFICES, P.S.C.**
        P.O. Box 9024055
        San Juan, PR 00902-4055
        Tel: 787-766-5052 Fax: 787-766-5551
        polonorteprlaw@gmail.com
        jrgmlaw@gmail.com

        *s/Juan Rafael González Muñoz*
        JUAN RAFAEL GONZÁLEZ MUÑOZ
        USDC-PR-202312

        **LUIS R. RAMOS CARTAGENA**
        128 F.D. Roosevelt Ave., 2nd Floor
        San Juan, PR 00918-2409
        Tel. 787-758-7819 / Fax 787-758-4152
        E-mail: lramos@lrc-pr.com

        *s/Luis R. Ramos Cartagena*
        LUIS R. RAMOS CARTAGENA
        USDC-PR-220310