IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDDA CESTERO-DE-AYALA, <br><br> Plaintiff, <br><br> v. <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"), ET AL., <br><br> Defendants. | Civil No. 12-1497 (SEC) |

**OPINION AND ORDER**

Before the Court are Miguel A. Cordero-López, Otoniel Cruz-Carrillo, Astrid Rodríguez-Cruz, and Arturo Deliz-Vélez's (Defendants) motion to dismiss (Docket # 40), and the plaintiff's opposition thereto (Docket # 42). After reviewing the filings and the applicable law, the motion to dismiss is **DENIED**.[1]

**Factual and Procedural Background**

Edda Cestero De Ayala (Plaintiff) is a career employee at the Puerto Rico Electric Power Authority (PREPA) since 1988, and a well-known member of the Popular Democratic Party (PDP). Docket # 33, ¶¶ 17, 20. In 2004, Plaintiff was promoted to the position of Supervisor of the "Real Estate Appraisal Division." Id. ¶ 17. After Puerto Rico's 2008 general elections, in which the New Progressive Party (NPP) took control of the Commonwealth's government, the newly elected governor named Miguel A. Cordero-López as Executive Director of PREPA. In early 2011, Cordero appointed Deliz-Vélez as "Resource Management Administrator" – a newly created trust position – in recognition for

---

[1] Defendants also request the dismissal of Plaintiff's Fourteenth Amendment Due Process claim and the supplemental state law claims under Law 115 and Article 1803 of the Puerto Rico Civil Code. Plaintiff states that none of these causes of actions were pleaded by her in the complaint. Accordingly, Defendants request on these matters is **DENIED**.

his political support during the previous electoral campaign. Id. ¶ 38. Deliz-Vélez was assigned to supervise Plaintiff. Id. ¶ 38. One month after his appointment, he moved her to a smaller office without windows and eliminated her assigned parking space. She was also divested of some of her functions as supervisor of the Real Estate Appraisal Division, and was transferred to an alleged inhospitable location. Later, and without previous notice, her position was changed to Supervisor of the Contracts Section. Id. ¶¶ 40-45. According to the complaint, Plaintiff personally complained to Cordero-López, Cruz-Carrillo (who later substituted Cordero-López as Executive Director), and Rodríguez-Cruz (Director of Human Resources at PREPA), about the alleged discriminatory actions against her. Docket # 33, ¶¶ 48, 60, 68, 69. She alleges that Rodríguez-Cruz disregarded her plights, and that Cordero-López and Cruz-Carrillo, despite promising to take actions against Deliz-Vélez, did nothing about it. Id. On June 29, 2011, Plaintiff filed an administrative charge before the Anti-Discrimination Unit of the Puerto Rico Department of Labor (ADU) and the Equal Employment Opportunity Commission (EEOC). Id. ¶ 47. An alleged retaliatory campaing commenced against Plaintiff. Id. ¶ 50.

On June 21, 2012, Plaintiff filed this suit under § 1983 alleging that she was discriminated against for political reasons and retaliated against in violation of the First Amendment of the United States Constitution, and the Constitution and laws of the Commonwealth of Puerto Rico. Id. The Defendants moved to dismiss, arguing that the complaint failed to state a claim against them, and that all claims prior to June 21, 2011 are time-barred. Docket # 40.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating the motion, the court must accept as true all "well pleaded facts [and indulge] all reasonable inferences" in their favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "Dismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). But even under the liberal pleading standards of Federal Rule of Civil Procedure 8, Twombly teaches that to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court clarified that two underlying principles must guide a court's assessment of a complaint's adequacy. First, a court must discard any conclusory allegations in the complaint, as these are not entitled to an assumption of truth. Id. at 677. That is to say, courts must disregard "rote repetition of statutory language," McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217 (1st Cir. 2012), as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 555). Some averments, moreover, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the

conclusory to the factual." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556 U.S. at 670. A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 663). Plausibility, the Court has instructed, is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 678. In doing so, courts must keep a bedrock principle in mind: A complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernández, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). So, while a complaint must be supported by facts and not mere generalities, "only enough facts to make the claim plausible" are required. Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012). "The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial." Id. Finally, because "the response to Twombly and Iqbal is still a work in progress," Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012), the First Circuit has cautioned that "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where . . . . 'some of the information needed may be in the control of [the] defendants.'" Id. (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)).

**Applicable Law and Analysis**

**The Statute of Limitations Challenge**

Defendants argue that Plaintiff's § 1983 and Article 1802 claims stemming from acts that occurred prior to June 21, 2011, that is, more than a year before the filing of the present action, are time barred. Docket # 40, p. 12. In response, Plaintiff posits that these claims are not time barred because she effectively tolled the one-year statute of limitations by filing an administrative complaint on June 29, 2011, before the ADU and the EEOC. Docket # 42, p. 5-6.

"Because Section 1983 borrows from state law to determine the length of its limitations period, we look to state law for tolling principles." Morán-Vega v. Cruz-Burgos, 537 F.3d 14, 21 (1st Cir. 2008). Article 1873 of the Puerto Rico Civil Code, provides that "prescription of actions is interrupted by their institution before the court, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. An extrajudicial claim, such as an administrative claim, "will toll the limitations period only if it puts forth an 'identical cause[] of action,' and only if '[t]he relief sought in the extrajudicial claim [is] the same as that later sought in court.'" Morán-Vega, 537 F.3d at 21.

At this stage, and due to the lack of information on record, the court cannot determine whether the administrative charge and the present complaint are identical. See Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 93 (1st Cir. 2004) (stating that "[g]iven the generalized pleading rules and the latitude of Fed. R. Civ. P. 12(b)(6), it is not always easy to tell whether identical claims are stated in different complaints."). For

instance, Defendants have not provided a copy of the administrative charge filed in order for the Court to compare it with the complaint, and assess whether the claims are, in fact, identical. Above all, the facts establishing Defendants' statute-of-limitations defense are not clear "on the face of the plaintiff's pleadings." Trans-Spec Truck Service, Inc., 524 F.3d at 320. Accordingly, Defendants' request is **DENIED**.[2]

### First Amendment Political Discrimination Claim

Defendants next aver that Plaintiff failed to set forth sufficient allegations to support a plausible First Amendment claim against Cordero-López, Cruz-Carrillo, and Rodríguez-Cruz (Co-defendants). The Court disagrees.

To establish a prima facie case of political discrimination under the First Amendment, a public employee must establish: (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's opossing political affiliation; (3) that there is an adverse employment action; and (4) that political affiliation was a substantial or motivating factor for the adverse employment action. Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013). Although Plaintiff need not plead facts sufficient to establish a prima facie case at the pleading stage, the Court uses these elements, as recently explained by the First Circuit in Rodríguez-Reyes, as a prism to shed light upon the plausibility of the claim. 711 F.3d at 51.

As to the first two elements, it is clear from the complaint that Plaintiff and Co-defendants belong to opposing political affiliations, and that Co-defendants knew of

---

[2] If necessary, at the summary judgment stage the parties should address whether a charge filed with the EEOC or Puerto Rico Anti-Discrimination Unit can toll the limitations period of § 1983 and Article 1802 claims. See Cintrón-Lozada v. Fondo del Seguro del Estado, 634 F. 3d 1, 2 (1st Cir. 2011); Padilla-Cintrón v. Rosselló-González, 247 F. Supp. 2d 48, 55 (D.P.R. 2003).

Plaintiff's political affiliation. Plaintiff states that she is a member of the PDP, and that Co-defendants are well-known members of the NPP who were appointed to positions of trust after the 2008 general elections. Docket # 33, ¶ 13-16.  The complaint also contains information about Plaintiff's active and visible role in party politics, and that at PREPA it is extremely common for employees to express their political views. Id. ¶¶ 20-21.  At this stage, these allegations are sufficient. See Rodríguez-Reyes, 711 F.3d at 57; Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 41 (1st Cir. 2012); Ocasio-Hernández, 640 F.3d at 15.

With regard to the third element, whether the conduct described in the complaint comprises an adverse employment action, it is firmly established that the First Amendment's protection against political discrimination also extends to adverse employment actions, such as "promotions, transfers, and recalls after layoffs based on political affiliations or support…" Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990); Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 767 (1st Cir. 2010). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." Carrasquillo, 494 F.3d at 4; Rodríguez-García, 610 F.3d at 767; see also Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230 (1st Cir. 2012) (citing Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) ("Actions short of discharge, including a substantial alteration in responsibilities, may satisfy the adverse employment action element"). The complaint does not contain allegations of direct discriminatory acts by Co-

Civil No. 12-1497 (SEC) Page 8

defendants. Plaintiff's factual allegations against Co-defendants, however, are premised on supervisory liability.

"As a general matter, liability for public officials under Section 1983 arises only if 'a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Grajales v. P.R. Ports Authority, 682 F.3d 40, 47 (1st Cir. 2012) (citing Ocasio-Hernández, 640 F.3d at 8). Supervisory liability under § 1983 "cannot arise solely on the basis of respondeat superior." Id. "Such liability requires that the supervisor's conduct (whether action or inaction) constitutes 'supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting to deliberate indifference." Id. (citing Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008)).

Here, Plaintiff alleges that she personally complained to Co-defendants about the alleged discriminatory actions against her and that they failed to take any actions against Deliz-Vélez, deliberately ignoring her complaints.[3] According to the complaint, Rodríguez-Cruz disregarded her plights, and Cordero-López and Cruz-Carrillo, despite promising to take actions against Deliz-Vélez, did nothing about it. Although the Court acknowledges that the allegations in the complaint against Co-defendants are thin, at this stage, however, they are sufficient. See Grajales, 682 F.3d at 48.

---

[3] Defendants do not request dismissal against Deliz-Vélez. In the complaint, however, Plaintiff avers that, even though Deliz-Vélez did not have the necessary professional education or training, he was appointed as "Resource Management Administrator." Docket # 33, ¶ 38. Deliz-Vélez was assigned to supervise Plaintiff. Id. On the month after his appointment, he moved Plaintiff to a smaller office without windows, eliminated her assigned parking space, divested her of supervisory functions, transferred her to an alleged inhospitable location, and changed her position to Supervisor of the Contracts Section without previous notice. Id. ¶¶ 42-45.

Finally, taking as true all of the allegations of the complaint, it is plausible that Plaintiff's political affiliation was a substantial or motivating factor behind the alleged adverse employment actions. According to the complaint, since 2009 Deliz-Vélez was voicing that he would get rid of all the "Populares" and that he was "'going to establish his [political] campaign committee' at the Urban Planning Division." Docket # 33, ¶¶ 28 & 40. Id. ¶¶ 22 & 23. After his appointment as Resource Management Administrator, he allegedly transferred most of the PDP-affiliated employees. Id. ¶¶ 31 & 32. Moreover, Plaintiff was a career employee since 1988 and had performed her duties satisfactorily. Id. ¶¶ 17-19. As the First Circuit explained in Rodríguez-Reyes, "it is important to bear in mind that the plaintiffs, for pleading purposes, need not establish this element; the facts contained in the complaint need only show that the claim of causation is plausible, [and d]irect evidence of political animus is not a sine qua non." 711 F.3d at 56. Therefore, Defendants' motion on this score is **DENIED**.

**Conclusion**

For the reasons stated above, Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7st day of August, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge